# CILENTI & COOPER, PLLC
ATTORNEYS AT LAW
60 East 42nd Street – 40th Floor
New York, New York 10165
____
Telephone (212) 209-3933
Facsimile (212) 209-7102

September 27, 2022

**BY ECF**

Hon. Taryn A. Merkl, U.S.M.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

>  Re: *Abreu, et al. v. 20 St. Wholesale, Inc., et al.*
>  <u>Case No. 22-CV-495 (TAM)</u>

Dear Judge Merkl,

We are counsel to the plaintiffs in the above-referenced matter, and jointly submit this letter with defense counsel seeking the Court's approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

## I. *The Need for the Court's Approval of the Agreement*

As plaintiffs' action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.,* No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II. Nature of the Action

This is an action brought pursuant to the federal Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New York State Labor Law §§ 190 *et seq.*, for the recovery of, *inter alia*, unpaid minimum wages and overtime compensation.

### a. The Defendants

Defendants own and operate 20 St. Wholesale Inc., located at 186 25th Street in Brooklyn, which provides wholesale distribution of non-alcoholic beverages to, among others, grocery stores, delicatessens, and restaurants within Brooklyn and Manhattan.

### b. The Plaintiffs

Plaintiffs Bolivar Abreu and Armando Garcia-Castillo were hired by the defendants to work as warehousemen and delivery workers. The following is a brief description of each plaintiff's claim:

#### i. *Bolivar Abreu*

Defendants hired Mr. Abreu in or about August 2018. Neither at the time he was hired nor anytime thereafter did the defendants provide plaintiff with a written wage notice setting forth his regular hourly rate of pay and corresponding overtime rate of pay. Mr. Abreu's employment ended on or about December 5, 2021.[1]

Plaintiff alleges that he worked six (6) days per week and, although his schedule fluctuated slightly each day and week, he typically worked twelve (12) hours per day from 7:00 a.m. until 7:00 p.m. He maintains that he was not provided a designed meal or rest break, and that he ate while working. Thus, plaintiff alleges working approximately seventy-two (72) hours per week. Plaintiff was not required to punch a time clock or other time-recording device at the start and end of his work shift.

According to Mr. Abreu, he was paid, in cash, on a salary basis straight time for all hours worked as follows:

- August 2018 – March 2019: $700/week
- April 2019 – October 2019: $750/week
- November 2019 – May 2020: $800/week
- June 2020 – September 2020: $850/week
- October 2020 – July 2021: Did Not Work for Defendants
- August 2021 – December 5, 2021: $900/week

---

[1] Mr. Abreu did not work for the defendants between October 2020 and July 2021.

Upon receiving his cash wages each week, the defendants failed to provide Mr. Abreu with a written wage statement setting forth, among other things, his gross wages, deductions, and net wages.

### ii. *Armando Garcia-Castillo*

Defendants hired Mr. Garcia-Castillo in or about October 2020. Neither at the time he was hired nor anytime thereafter did the defendants provide Mr. Garcia-Castillo with a written wage notice setting forth his regular hourly rate of pay and corresponding overtime rate of pay. Mr. Garcia-Castillo's employment ended on or about December 4, 2021.

Mr. Garcia-Castillo alleges that he worked six (6) days per week and, although his schedule fluctuated slightly each day and week, he typically worked twelve (12) hours per day from 7:00 a.m. until 7:00 p.m. He maintains that he was not provided a designed meal or rest break, and that he ate while working. Thus, Mr. Garcia-Castillo alleges working approximately seventy-two (72) hours per week. Plaintiff was not required to punch a time clock or other time-recording device at the start and end of his work shift.

According to Mr. Garcia-Castillo, he was paid, in cash, on a salary basis straight time for all hours as follows:

- First Two Weeks: $750/week
- Mid-October 2020 – July 2021: $800/week
- August 2021 – mid-November 2021: $850/week
- Mid-November 2021 – December 4, 2021: $900/week

Upon receiving his cash wages each week, the defendants failed to provide Mr. Garcia-Castillo with a written wage statement setting forth, among other things, his gross wages, deductions, and net wages.

Based on the foregoing allegations, it is plaintiffs' contention that they are owed approximately $29,000 in unpaid minimum wages; approximately $137,500 in unpaid and overtime compensation; and approximately $17,000 in unpaid "spread of hours" premium. Together with liquidated damages, plaintiffs estimate their total damages at approximately $367,750. Compensatory minimum wage damages are calculated based on the difference between the statutory minimum wage in effect and each plaintiff's regular hourly rate of pay up to forty (40) hours per week (which is determined by dividing each plaintiff's gross wages by the total number of hours worked). Because plaintiffs allege that their regular hourly rate fell below the statutory minimum wage, compensatory overtime compensation damages are calculated based on time and one-half the statutory minimum wage

Together with statutory damages for the defendants' failure to provide wage notices and statements, the total value of plaintiffs' claims amount to approximately $387,750 exclusive of attorneys' fees and interest.

Defendants' contest plaintiffs' calculation of damages and contend that because plaintiffs were paid on a salary basis for work shifts that fluctuated each day and week, the fluctuating workweek ("FWW" also known as the "half-time" analysis) methodology should be utilized when calculating plaintiffs' overtime damages. If proven correct, plaintiffs' calculation of underlying unpaid wages, overtime compensation and "spread of hours" premium would have been reduced to approximately $82,000 before liquidated damages.

### III.     Facts Disputed by Defendants

In addition to the calculation methodology, the defendants dispute certain alleged facts – perhaps most importantly, the number of hours plaintiffs allege to have worked each week. Defendants believe that plaintiffs have inflated the number of hours worked each week, and also dispute the time frame plaintiffs allege they worked for defendants. Defendants believe that plaintiffs' damage calculations include significant time periods where plaintiffs left defendants' employ, were on vacation, or worked more than one job, therefore unable to work the number of hours alleged. Further, defendants believe that plaintiffs worked sporadic overtime on a weekly basis and were paid properly for all hours worked.

### IV.     The Settlement

As reflected in the attached Agreement, the parties agreed to settle plaintiffs' claims for a total of $105,000 paid in full within three (3) business days of the Court's approval of the Agreement and dismissal of the action.

### V.     The Agreement is Fair and Reasonable

The parties believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about plaintiff's claims.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.,* 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.,* No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well with the assistance of experienced mediator Andrew Kimler, Esq. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness

of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

In light of the various disputes concerning plaintiffs' claims, as well the risk of ongoing litigation, this settlement should be approved. By settling now, plaintiffs receive a significant portion of their alleged unpaid wages even after attorneys' fees and costs are deducted (and all of their underlying unpaid wages if the FWW were deemed applicable), while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiffs during and after mediation, they made the decision to accept the defendants' offer. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

## VI. *Application for Attorneys' Fees*

Pursuant to this firm's retainer agreement with plaintiffs, our firm seeks retain one-third of the net proceeds of the settlement after expenses are deducted.[2] Therefore, plaintiff's counsel seeks $34,643.86 in fees, plus $1,058.34 in costs, for a total fee application of $35,702.20.

Attorneys' fees in FLSA settlements are examined, to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiffs' counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiffs prevailed, plaintiffs' counsel would have made a fee application for much more than the amount currently sought in fees.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, courts routinely hold that a contingency fee award is presumptively valid where, as here, the proposed fee amount is exactly one-third of the net settlement amount. *See Caceres v. Brentwood Farmers Market*, No. 20 Civ. 3476, 2021 U.S. Dist. LEXIS 147063, at *4-6 (E.D.N.Y. May 4, 2021); *Garcia v. Cloister Apt. Corp.*, 16 Civ. 5542, 2019 U.S. Dist. LEXIS 51887, at *9-10 (S.D.N.Y. Mar. 27, 2019). Here, plaintiffs agreed to a one-third contingency retainer agreement with counsel in connection with their wage-and-hour claims.

If the Court were to analyze counsel's fees on a lodestar basis, the Court should still approve the Agreement. While counsel's lodestar is slightly less than the fees requested herein, courts routinely permit an award of attorneys' fees with a multiplier of up to twice the amount of the lodestar. *See Sanchez-Torres v. Sanchez*, No. 19 Civ. 4222, 2021 U.S. Dist. LEXIS 248504, at *4 (S.D.N.Y. Dec. 29, 2021) (awarding fees with multiplier of 2.2 of lodestar amount); *see also Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F. Supp. 3d 424, 438-39 (S.D.N.Y. 2014) (collecting cases) ("[a] multiplier near 2 compensates [plaintiff's attorneys] appropriately"). Counsel's requested fee award represents a minimal multiplier far below acceptable standards.

---

[2] The firm expenses total $1,058.34.

      Attached hereto is a copy of Cilenti & Cooper, PLLC's billing record for work performed on this matter. Cilenti & Cooper, PLLC's requested rates ($400 per hour for lawyers and $100 for paralegals) have previously been approved as reasonable. *See Rescalvo v. BTB Events & Celebrations Inc.*, 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v. Crosstown Diner Corp., et al.;* No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli*, No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.*, No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.*, No. 15 Civ. 7443 (DF) (S.D.N.Y. 2016).

      For all of the reasons set forth above, the parties respectfully request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal, which is being submitted simultaneously herewith, that expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

      Respectfully submitted,

      /s/ *Justin Cilenti*
      Justin Cilenti

Enclosures

cc: Nadia Pervez, Esq. (by ECF)